STATE OF CONNECTICUT *v.* GARY STRAUB
(AC 24835)

McLachlan, Gruendel and Foti, Js.

148

Argued April 25—officially released July 12, 2005

*Alice Osedach,* assistant public defender, for the appellant (defendant).

*Nancy L. Chupak,* assistant state's attorney, with whom, on the brief, were *Mary M. Galvin,* state's attorney, and *Kevin D. Lawlor,* assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Gary Straub, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics in violation of General Statutes § 21a-279 (a) and conspiracy to possess narcotics with intent to sell in violation of General Statutes §§ 53a-48 (a) and 21a-277 (a). On appeal, the defendant claims

that (1) the trial court improperly denied his motion to suppress, (2) the court improperly failed to instruct the jury on nonexclusive possession of premises and (3) there was insufficient evidence to support the conviction. We affirm the judgment of the trial court.

On September 2, 2002, at approximately 9:23 p.m., two police officers observed the defendant using a pay telephone located between two gasoline stations on Elm Street in West Haven. The officers knew that that telephone was used frequently to arrange drug sales with dealers from New Haven because it was located in a busy area close to the Kimberly Avenue bridge leading to New Haven. After the defendant completed his call, he remained near the pay telephone and watched the cars coming from the bridge to New Haven. The defendant waited approximately ten to fifteen minutes until a blue car drove up to him. He spoke to the driver of the car and then entered the front passenger seat. The officers then approached the car and ordered the defendant and the driver to exit. The officers observed that the defendant had money in his hand and that there was a clear plastic bag with a white substance lying in plain view between the front passenger seat and the front passenger door. The bag contained fourteen smaller bags, which in turn contained either a rock like substance or a powder. The bags tested positive for cocaine.

The defendant was charged with one count of possession of narcotics and one count of conspiracy to possess narcotics with intent to sell. After a trial, the jury returned a verdict of guilty on both counts. The court rendered judgment in accordance with the verdict and sentenced the defendant to a total effective term of eight years incarceration, execution suspended after four years, followed by five years probation. This appeal followed.

I

The defendant's first claim is that the court should have granted his motion to suppress the money in his hand and the bag of cocaine next to his seat in the car because the police had no basis for suspecting him of criminal activity. We disagree.

"Our standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . ." (Internal quotation marks omitted.) *State* v. *Hernandez*, 87 Conn. App. 464, 469, 867 A.2d 30, cert. denied, 273 Conn. 920, 871 A.2d 1030 (2005).

The court denied the defendant's motion to suppress because it found that the police officers had enough information to suspect him of criminal activity. The court stated: "[T]here are several items, several facts, which independently may not be sufficient, but are all necessary to reach the conclusion . . . . The defendant [was] present in a known drug area, in combination with apparent drug activity, and the defendant's questionable behavior [supported] the officers' suspicion. . . . [W]e have the time in the evening that this incident took place, the activity with respect to the telephone. There [was] a time lapse where the officers observed the defendant . . . looking for someone . . . . [T]he officers indicated that they were familiar with the area [and said] that from their knowledge and experience, the activities engaged in [indicated] criminal activity."

"Under the fourth amendment to the United States Constitution and article first, §§ 7 and 9, of our state

constitution, a police officer is permitted in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes if the officer believes, based on a reasonable and articulable suspicion that the individual is engaged in criminal activity, even if there is no probable cause to make an arrest. . . . Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion." (Citations omitted; internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 149, 864 A.2d 666 (2004).

"[A]n investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal. . . . In evaluating the validity of such a stop, courts must consider whether, in light of the totality of the circumstances, the police officer had a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Internal quotation marks omitted.) Id., 150.

We agree with the court that the defendant's behavior provided an objective basis for the officers to suspect him of criminal activity. The defendant used a pay telephone known to be used frequently to arrange drug sales and then watched the cars coming from the bridge to New Haven for ten to fifteen minutes. He entered the blue car only after first speaking to the driver. Taken together, those facts provided a reasonable and articulable suspicion of criminal activity. The officers therefore were permitted to detain the defendant, and the court's findings in support of its denial of the motion to suppress were not clearly erroneous.

## II

The defendant's second claim is that the court should have instructed the jury on nonexclusive possession of premises because he was not the only occupant of the car. We disagree.

The defendant requested an instruction on possession of narcotics that provided in pertinent part: "The mere presence of the defendant in or near a vehicle where a narcotic substance is found is not sufficient to support a finding of constructive possession. However, presence is a material and probative factor for you to consider along with all of the other evidence." The court agreed to give that instruction.

The defendant requested a second instruction that provided in pertinent part: "Where the defendant is not in exclusive possession of the premises where the narcotics are found, you may not infer that he knew of their presence and that he had control of them, unless he made some incriminating statement or unless there are some other circumstances [that] tend to support such an inference." In declining to give the second instruction, the court stated: "I feel as though [the first instruction] adequately addresses that issue." The defendant contends that the court's refusal to give the second instruction deprived him of due process and the right to present a defense based on nonexclusive possession of premises.

When a challenge to a jury instruction is of constitutional magnitude, the standard of review is "whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Morales*, 71 Conn. App. 790, 820, 804 A.2d 902, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002). "[T]he charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon

the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Internal quotation marks omitted.) Id., 820–21.

We conclude that it is not reasonably possible that the jury was misled by the omission of the second instruction on nonexclusive possession of premises. The court instructed the jury that presence was one factor to be considered, but was insufficient by itself to support a finding that the defendant constructively possessed the cocaine. The second instruction requested by the defendant repeated the concept that other evidence besides presence was necessary to infer that he had knowledge of the bag of cocaine adjacent to his seat in the car. Because the second instruction was essentially the same as the instruction that the court gave, we determine that the defendant was not deprived of due process and the right to present a defense based on his nonexclusive occupancy of the car.

### III

The defendant's last claim is that there was insufficient evidence to support his conviction of possession of narcotics and conspiracy to possess narcotics with intent to sell. We disagree.

The defendant preserved his claim by filing a motion for a judgment of acquittal, which the court denied. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably

could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether it believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; internal quotation marks omitted.) *State* v. *Bloom*, 86 Conn. App. 463, 471–72, 861 A.2d 568 (2004), cert. denied, 273 Conn. 911, 870 A.2d 1081 (2005).

As to the count of possession of narcotics, "[t]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 84 Conn. App. 505, 510–11, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004).

We conclude that the jury reasonably could have found beyond a reasonable doubt that the defendant was guilty of possession of narcotics. In addition to the circumstances of the defendant's entry into the car, the bag of cocaine lay in plain view on the floor between the defendant's seat and the door. Considered together,

those facts were sufficient to support a finding that the defendant possessed the cocaine.

As to the count of conspiracy to possess narcotics with intent to sell, "[t]o establish the crime of conspiracy . . . the state must show that there was an agreement between two or more persons to engage in conduct constituting a crime and that the agreement was followed by an overt act in furtherance of the conspiracy . . . . The state must also show intent on the part of the accused that conduct constituting a crime be performed. . . . The existence of a formal agreement between the parties need not be proved; it is sufficient to show that they [were] knowingly engaged in a mutual plan to do a forbidden act." (Internal quotation marks omitted.) *State* v. *Garner*, 270 Conn. 458, 476, 853 A.2d 478 (2004).

We conclude that the jury reasonably could have found beyond a reasonable doubt that the defendant was guilty of conspiracy to possess narcotics with intent to sell. The existence of an agreement could be inferred from the circumstances of the defendant's entry into the car, the money in his hand and his possession of a bag containing fourteen smaller bags of cocaine packaged for street sales. As to the overt act, "[p]ossession of the drugs is sufficient for proof of the overt act in a conspiracy." (Internal quotation marks omitted.) *State* v. *Sanchez*, 75 Conn. App. 223, 241, 815 A.2d 242, cert. denied, 263 Conn. 914, 821 A.2d 769 (2003). Finally, intent to sell could be inferred from the packaging of the cocaine. We therefore reject the defendant's claim of insufficient evidence.

The judgment is affirmed.

In this opinion the other judges concurred.